## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, HAZARDOUS
MATERIALS AND WASTE MANAGEMENT DIVISION,

     Plaintiff,

v.

UNITED STATES OF AMERICA; and
UNITED STATES DEPARTMENT OF THE ARMY,

     Defendants.

---

## COMPLAINT

---

Plaintiff, the Colorado Department of Public Health and Environment, Hazardous

Materials and Waste Management Division ("the Division" or "the State" or "CDPHE"), through

the undersigned counsel, makes the following Complaint pursuant to 42 U.S.C. 9621(e)(2).

### INTRODUCTION

1.     The Division comes before the Court to compel compliance with requirements of the

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§

9601 to 9674 ("CERCLA," also known as "Superfund") remedial action at the Rocky

Mountain Arsenal.

## PARTIES

2.   Plaintiff, the Colorado Department of Public Health and Environment, Hazardous
     Materials and Waste Management Division, located at 4300 Cherry Creek Drive South,
     Denver, Colorado, 80246, is the Colorado State agency vested with responsibility for
     participating in CERCLA activities in Colorado.  Colo. Rev. Stat. §§ 25-15-301, 25-16-
     101 and -103 (2018).

3.   Defendant United States of America ("the United States") is a "person" as that term is
     defined in CERCLA.  42 U.S.C. § 9601(21).

4.   Defendant United States Department of the Army ("the Army") is a "person" as that term
     is defined in CERCLA.  42 U.S.C. § 9601(21).

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because
     Plaintiff's claim for relief seeks to enforce 42 U.S.C. § 9621(e)(2).  The Court also has
     jurisdiction pursuant to 28 U.S.C. § 1346(a)(2).  Venue is proper in this Court pursuant to
     28 U.S.C. § 1391(b) and 42 U.S.C. § 9621(e)(2).

## GENERAL ALLEGATIONS

### Background on the Rocky Mountain Arsenal

6.   The Rocky Mountain Arsenal On-Post Operable Unit consists of the contiguous 27
     square mile parcel of property located at 5650 Gateway Road, Commerce City, Adams
     County, Colorado ("the Arsenal") as shown in **Exhibit 1** attached hereto and
     incorporated by reference.

7.   The Army commenced operations at the Arsenal in 1942 for the manufacture, assembly, demilitarization and disposal of chemical warfare agents, chemical products, incendiary munitions, chemical munitions, chemical agents, and other hazardous substances.

8.   From 1946 until 1987, the Army leased portions of the Arsenal to private industry, including to Shell Oil Company ("Shell").

9.   Shell manufactured pesticides at the Arsenal from 1952 to 1982.

10.   The Army and Shell stored, treated and disposed of hazardous waste in various hazardous waste units at the Arsenal.

11.   In particular, the Army and Shell operated Basin F, a hazardous waste surface impoundment, for the storage, treatment and disposal of liquid and solid listed and characteristic hazardous wastes.  Hazardous wastes and hazardous constituents were released into the environment from Basin F.  In December 1981, disposal of hazardous waste to Basin F was terminated, but hazardous wastes remained in Basin F and it continued to operate and discharge hazardous wastes into the environment.

12.   The Army's and Shell's waste management and disposal practices at Basin F and elsewhere resulted in significant levels of contamination across the Arsenal.  The principal contaminants include organochlorine pesticides, heavy metals, agent-degradation products and manufacturing by-products, and chlorinated and aromatic solvents.  All of these constituents constitute threats to human health and the environment.

### The CERCLA Remedy
### and the Creation of the Rocky Mountain Arsenal Wildlife Refuge

13.     In 1987, the United States Environmental Protection Agency ("EPA") listed the Arsenal

        on the National Priorities List of the nation's most contaminated sites to be remediated

        via CERCLA, as amended by the Superfund Amendments and Reauthorization Act of

        1986 ("SARA"), Pub. L. No. 99-499; the Community Environmental Response

        Facilitation Act of 1992 ("CERFA"), Pub. L. No. 102-426; the National Contingency

        Plan; and other implementing regulations.

14.     In 1988, the CERCLA interim response action for Basin F was initiated.

15.     The Rocky Mountain Arsenal National Wildlife Refuge Act of 1992, Pub. L. No. 102-

        402 ("Refuge Act") created the Rocky Mountain Arsenal National Wildlife Refuge ("the

        Refuge") on portions of the Arsenal.  The Refuge Act established the process for transfer

        of management responsibilities and jurisdiction over the portions of the Arsenal that

        constitute the Refuge from the Army to the United States Fish and Wildlife Service, an

        agency of the United States Department of Interior ("DOI").

16.     The On-Post Record of Decision ("On-Post ROD"), pursuant to CERCLA, formally

        established the selected remedy and the cleanup approach for the Arsenal.  The On-Post

        ROD was signed by the Army, the EPA, and CDPHE on June 11, 1996, with concurrence

        from Shell and DOI.  The large volume of contaminated soil present on the site precluded

        a remedy in which all contaminants could be excavated and cost effectively treated.

        Pursuant to the On-Post ROD, cleanup of the Arsenal was therefore based on the removal

        of fixed volumes of contaminated soil from across the Arsenal's various solid waste

4

management units ("SWMUs"); consolidation of contaminated soils under RCRA[1]-

equivalent covers; and disposal in two RCRA subtitle C hazardous waste landfills,

approved under the 1996 Compliance Order on Consent No. 96-06-07-01 between the

Army and the Division.

17.   The On-Post ROD did not require complete characterization of the horizontal and vertical

extent of contamination at the Arsenal, including its SWMUs, nor did it involve

remediation of these areas to unrestricted use levels.  Instead, the On-Post ROD relied on

the United States retaining ownership and stated that "continued restrictions on land use

or access are included as an integral component of all on-post alternatives" (On-Post

ROD, pp. 7-2, 10-4) to protect human health and the environment from undiscovered

waste and hazardous constituents both known to exist and as-yet undiscovered and left in

place at the Arsenal.

18.   The Off-Post Record of Decision ("Off-Post ROD") was signed on December 19, 1995.

19.   The goal of the Off-Post ROD was to prevent citizen exposure to contaminated

groundwater above Colorado Basic Standards for Groundwater.  This was accomplished

in part by establishing and monitoring the areal extent of the off-post groundwater plume

from the Arsenal, constructing a water treatment and distribution system to replace

affected off-post domestic water wells, and continuing to monitor the off-post

groundwater plume for Contaminants of Concern from the Arsenal.  The option exists for

existing domestic water well users to have their water well replaced by the Army if the

_____

[1] The Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901, *et seq.*

well is known to intersect an existing plume and be contaminated with Arsenal chemicals above the relevant standards.

20. On August 24, 2010, Basin F at the Arsenal was certified closed in accordance with 6 Colo. Code Regs. § 1007-3:265.115, with hazardous waste and hazardous constituents left in place, in accordance with the Basin F Closure Plan.

## The Defendants' Owner and Operator Liability

21. The United States is an "owner or operator" of the Arsenal, as that term is defined in 42 U.S.C. § 9601(20).

22. Some historic documents indicate the Army is the "owner" of the Arsenal.

23. The Army is an "owner or operator" of the Arsenal, as that term is defined 42 U.S.C. § 9601(20).

## Recent Arsenal History

24. On November 5, 2018, the Division issued to the Army a Notice of Non-compliance ("Notice") concerning the effectiveness of the Arsenal CERCLA remedy.

25. The Notice informed the Army of seven apparent violations of requirements of the CERCLA remedial action and requested the Army submit plans and timetables for meeting its CERCLA remedial obligations.

26. On December 11, 2018, the Army sent CDPHE a letter generally indicating that the Army was addressing the deficiencies in the Notice through the CERCLA process and indicated that the CERCLA dispute resolution process was the forum in which the issues should be addressed.

27.   On March 14, 2019, the Division sent the Army a letter requesting Army enter into a

stipulated injunction so the Division could enforce the requirements of the CERCLA

remedy.

28.   On March 29, 2019, the Army sent CDPHE a letter indicating again that the CERCLA

dispute resolution process is the correct process for addressing any deficiencies with the

Army's management of the remedy.

**FIRST CLAIM FOR RELIEF**

**(An injunction requiring the Army to submit a plan to correct the violation of the
On-Post ROD for failing to dewater the Shell Trenches)**

29.   The above allegations are incorporated herein.

30.   CERCLA empowers a state to "enforce any Federal or State standard, requirement,

criteria, or limitation to which the remedial action is required to conform."  42 USC §

9621(e)(2) (2018).

31.   The Shell Disposal Trenches ("Shell Trenches") consisted of trenches used for the

disposal of solid and liquid wastes from Shell production facilities.  Wastes were buried

both in bulk form and in drums from 1952 through 1966.  In 1994, an Interim Response

Action ("IRA") was conducted which consisted of the installation of a slurry wall around

the Shell Trenches area to reduce the migration of contaminated groundwater away from

the site, and a three-foot soil cap was placed over the site to reduce infiltration of

rainwater through the contaminated area.  In 1999, a final remedy was implemented

which consisted of a second slurry wall encircling the IRA slurry wall, and modification

of the existing cap/cover to be RCRA-equivalent.

32.     Section 9.5 and Table 9.5-1 of the On-Post ROD require the Army and Shell to dewater the Shell Trenches as necessary to ensure containment.

33.     Dewatering becomes necessary when groundwater comes into contact with waste remaining in place in the Shell Trenches.

34.     Beginning on October 3, 2012, intermittently and as recently as the present day, the measured groundwater level in the Shell Trenches indicates that groundwater is likely coming into contact with the waste remaining in place and subsequently migrating out of the Shell Trenches' containment.  These repeated violations indicate the Shell Trenches remedy is not functioning as required by the On-Post ROD.

35.     The Army must submit a plan to CDPHE for review and approval that describes the actions it will undertake to actively dewater the Shell Trenches whenever necessary to avoid further contact of groundwater with waste and to prevent further violations of the On-Post ROD.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.

36.     The Army must comply with the approved plan.

## SECOND CLAIM FOR RELIEF

**(An injunction requiring the Army to submit a plan to correct the violation of the On-Post ROD for failing to comply with the Colorado Basic Groundwater Standard for 1,4-dioxane)**

37.     The above allegations are incorporated herein.

38.     CERCLA empowers a state to "enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform."  42 USC § 9621(e)(2) (2018).

39.     Section 10.1.2.1 and Table 10.1-2 of the On-Post ROD require the Army to comply with

Colorado Basic Standards for Groundwater ("CBSG").

40.     The CBGS for 1,4-dioxane in groundwater is 0.35 ppb.

41.     On April 6, 2017, the Army and Shell provided a Data Summary Report detailing results

of effluent sampling for 1,4-dioxane and indicating intermittent exceedances of the

CBSG standard at the North Boundary Containment System ("NBCS") and North West

Boundary Containment System ("NWBCS").

42.     These exceedances at NWBCS are intermittent and were last recorded on July 5, 2016.

The exceedances at the NBCS remained as of October 2018 and thus constitute ongoing

violations of the On-Post ROD.

43.     The Army must submit a plan to CDPHE for review and approval that describes the

actions it will undertake to install or modify a treatment system capable of removing 1,4-

dioxane groundwater concentrations to below the CBSG at the Arsenal boundaries to

prevent further violations of the On-Post ROD. The plan must include a schedule with

enforceable dates for each step of the plan from design through implementation through

completion.

44.     The Army must comply with the approved plan.

**THIRD CLAIM FOR RELIEF**

**(An injunction requiring the Army to submit a plan to correct the violation of the
On-Post ROD for dieldrin exceedance at NWBCS)**

45.     The above allegations are incorporated herein.

46. CERCLA empowers a state to "enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform."  42 USC § 9621(e)(2) (2018).

47. Section 10.1.2.1 and Table 10.1-2 of On-Post ROD requires the Army to comply with Colorado Basic Standards for Groundwater ("CBSG").

48. Section 9.5 and Table 9.5-1 of the On-Post ROD require the Army to capture and treat contaminated groundwater to meet the CBSG.

49. The CBSG for dieldrin is 0.002 ppb.

50. On July 30, 2013, the Army submitted the FY2012 Annual Summary Report ("ASR"). The ASR showed concentrations of dieldrin in wells downgradient of the Northwest Boundary Containment System ("NWBCS") in excess of the CBSG.  This constitutes a violation of the On-Post ROD.

51. In October 2018, the Army and Shell committed to replacing its boundary water treatment systems that service the NWBCS and the NBCS, in part to address the elevated dieldrin emanating from the Arsenal.

52. On March 21, 2019, the Army informed the State that should it and EPA not resolve ongoing funding disputes, the Army would be unable to replace its boundary water treatment systems.

53. The Army must submit a plan to CDPHE for review and approval that describes the actions it will undertake to install or modify a treatment system capable of removing dieldrin groundwater concentrations to below the CBSG at the Arsenal boundaries to prevent further violations of the On-Post ROD. The plan must include a schedule with

enforceable dates for each step of the plan from design through implementation through completion.

54. The Army must comply with the approved plan.

## FOURTH CLAIM FOR RELIEF

### (An injunction requiring the Army to submit a plan to comply with the Off-Post ROD requirements for long-term monitoring downgradient of NWBCS)

55. The above allegations are incorporated herein.

56. CERCLA empowers a state to "enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform." 42 USC § 9621(e)(2) (2018).

57. The Off-Post ROD requires the Army to replace domestic water wells that are contaminated above standards by Arsenal contaminants and to update and provide a copy of the Containment System Remediation Goals exceedance map to the State Engineer's Office for the Well Notification Program. These requirements are accomplished by adequate monitoring of the off-post contaminant plume to establish where the contaminated groundwater exists.

58. During the period of the last CERCLA Five-Year Review, the detection methodology for dieldrin was improved, therefore bringing the Army's ability to detect dieldrin closer to the applicable standard. It was discovered that dieldrin exists above the applicable standard in several wells downgradient from the Northwest Boundary Containment System ("NWBCS").

59. The 2015 Five-Year Review determined that the Off-Post Long-Term Monitoring Plan, which includes the exceedance monitoring network downgradient of the NWBCS, does

not adequately determine the source of the dieldrin and determine if the system is bypassed.  It is further inadequate to delineate the areal extent of the groundwater plume in that direction and hence, inadequate to determine whether any domestic well users in the area should have their wells tested and/or replaced, or a hookup to South Adams County Municipal Water be provided, in order to fulfill the requirements of the Off-Post ROD.

60.     The Army must submit a plan to CDPHE for review and approval that describes the actions it will undertake to expand the off-post exceedance monitoring network to comply with the Off-Post ROD.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.

61.     The Army must comply with the approved plan.

### FIFTH CLAIM FOR RELIEF

**(An injunction requiring the Army to submit a plan to comply with the On-Post ROD requirements concerning surface water standards in former Basin E)**

62.     The above allegations are incorporated herein.

63.     CERCLA empowers a state to "enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform."  42 USC § 9621(e)(2) (2018).

64.     Basin E is a former disposal basin for chemical wastes at the Arsenal.  It received overflow of chemical wastes destined for storage in nearby basins.  The known areas of contaminated soil were addressed during the course of the remedy.

65.     Surface water sampling conducted in 2013, 2015 and 2017 has consistently shown that surface water in the former Basin E at the Arsenal exceeds Colorado Basic Standards and

Methodologies for Surface Water ("CBSM") for some inorganic chemicals in excess of Colorado Aquatic Life Standards, in violation of the On-Post ROD.

66.    Section 10.1.2.1 and Table 10.1-2 of the On-Post ROD require the Army to comply with the CBSM for inorganic chemicals.

67.    The Army must submit a plan to CDPHE for review and approval that describes the actions it will undertake investigate and correct exceedances of CBSMs in the former Basin E.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.

68.    The Army must comply with the approved plan.

## PRAYER FOR RELIEF

THEREFORE, the Division requests that this Court:

1.    Issue a mandatory injunction requiring Defendants to, within sixty (60) days:

(a)    Submit a plan to CDPHE for review and approval that describes the actions it will undertake to actively dewater the Shell Trenches whenever necessary to avoid further contact of groundwater with waste and to prevent further violations of the On-Post ROD.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.  The Army must comply with the approved plan.

(b)    Submit a plan to CDPHE for review and approval that describes the actions it will undertake to install or modify a treatment system capable of removing 1,4-dioxane groundwater concentrations to below the CBGS at the Arsenal boundaries to prevent further violations of the On-Post ROD. The plan must

13

include a schedule with enforceable dates for each step of the plan from design through implementation through completion. The Army must comply with the approved plan.

(c) Submit a plan to CDPHE for review and approval that describes the actions it will undertake to install or modify a treatment system capable of removing dieldrin groundwater concentrations to below the CBGS at the Arsenal boundaries to prevent further violations of the On-Post ROD. The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.  The Army must comply with the approved plan.

(d) Submit a plan to CDPHE for review and approval that describes the actions it will undertake to expand the off-post exceedance monitoring network to comply with the Off-Post ROD.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion. The Army must comply with the approved plan.

(e) Submit a plan to CDPHE for review and approval that describes the actions it will undertake investigate and correct exceedances of CBSMs in the former Basin E to comply with the On-Post ROD.  The plan must include a schedule with enforceable dates for each step of the plan from design through implementation through completion.  The Army must comply with the approved plan; and

2.  Grant any other relief deemed appropriate.

14

Respectfully submitted April 15, 2019 by the undersigned counsel:

PHILIP J. WEISER
Attorney General


*/s/ David Banas*

DAVID BANAS*
Senior Assistant Attorney General
LUKAS B. STAKS*
Assistant Attorney General
Solid and Hazardous Waste/CERCLA Litigation Unit
Natural Resources and Environment Section
Colorado Office of the Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado  80203
Telephone:   (720) 508-6284 (Banas);
                      (720) 508-6251 (Staks)
FAX:  (720) 508-6039
E-Mail:  david.banas@coag.gov;
              lukas.staks@coag.gov
*Counsel of Record

   Attorneys for Colorado Department of Public
     Health and Environment