IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01105-PAB-MEH

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,
HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and UNITED STATES DEPARTMENT OF THE ARMY,

    Defendants.

_____

### MOTION TO COMPEL CONTRACTUAL DISPUTE RESOLUTION AND INCORPORATED MEMORANDUM OF LAW
_____

**INTRODUCTION AND BACKGROUND**

Defendants, the United States of America and the United States Department of the Army ("Army"), respectfully move for an order compelling Plaintiff Colorado Department of Public Health and the Environment, Hazardous Materials and Waste Management Division ("CDPHE" or the "State") to comply with the dispute resolution process prescribed by the 1989 *Federal Facility Agreement Pursuant to CERCLA Section 120* ("FFA") for the Rocky Mountain Arsenal ("RMA") because the State bound itself to this process, which governs the claims raised in CDPHE's April 15, 2019, Complaint, ECF No. 1. After conferring, counsel for CDPHE has indicated that Plaintiff opposes the relief requested in this motion.

The RMA was formerly used by the Army for weapons production.  *See* Ex. A - Scharmann Decl. ¶ 2.  Over the last four decades, the Army has conducted an approximately $2 billion cleanup of the contaminated areas under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.  *Id.*

### A.     The FFA

The Army, the U.S. Environmental Protection Agency ("EPA"), Shell Oil Co. ("Shell"), and others negotiated an interagency agreement and framework for the remediation of RMA pursuant to CERCLA through the FFA, which became effective February 17, 1989.  *See* Ex. B - FFA.  This Court has recognized that the FFA was executed "pursuant to section 120(e) of CERCLA," illustrates that EPA shall have final supervisory and regulatory authority for the cleanup, and provides "a comprehensive plan and program for the assessment, selection, implementation, and monitoring of response actions at the" former RMA.  *Worldworks I, Inc. v. Dep't of the Army*, 22 F. Supp. 2d 1204, 1205-06 (D. Colo. 1998).  By its terms, the FFA applies to all aspects of the CERCLA remedy at RMA, from the phases leading to the issuance of a Record of Decision ("ROD")[1] in sections XXII through XXIV, to the RODs in section XXV,[2] and to activities that occur after the issuance of the RODs, including but not limited to "Design

---

[1] Under CERCLA, "[t]he ROD explains which cleanup alternatives will be used at" sites and "contains information on site history, site description, site characteristics, community participation, enforcement activities, past and present activities, contaminated media, the contaminants present, description of the response actions to be taken, and the remedy selected for cleanup."  EPA, *About the Superfund Cleanup Process; Record of Decision (ROD) (Remedy Decisions)*, https://www.epa.gov/superfund/about-superfund-cleanup-process#tab-4 (last visited Aug. 8, 2019).

[2] This includes ROD deadlines and schedules.  *See* Ex. B - FFA ¶¶ 26.1 ("[T]his Section shall control the development, enforceability and extension of Deadlines and Schedules."), 26.14-15 (requiring dispute resolution if there is no agreement regarding extension of deadlines).

and Implementation of Final and Supplemental Response Actions" (section XXXIV), "Operation and Maintenance of Response Action Structures and Monitoring of Response Actions" (section XXXV), and "Periodic Review" (section XXXVI). *See generally* Ex. B - FFA.

### 1.     The Dispute Resolution Process

The FFA sets out requirements for informal and formal dispute resolution in section XXX. The informal process requires a good-faith effort to resolve disputes at the RMA Committee level, which consists of the Army, Shell, EPA, and CDPHE as voting members. *Id.* ¶¶ 30.1, 15.1-15.6. If the dispute is not resolved informally, the decision of the Army, as Lead Agency, shall be implemented unless another Organization (EPA, Shell, or the State) initiates formal dispute resolution. *Id.* ¶ 30.1.[3]

Formal dispute resolution requires an Organization to provide the RMA Committee with written notice of its intent to invoke dispute resolution and to provide written notice to the RMA Council. *Id.* ¶ 30.2. Once invoked, formal dispute resolution proceeds through three tiers with time frames of 14, 30, and 30 days, respectively. First, the RMA Council, consisting of representatives from the Army, Shell, EPA, and CDPHE as voting members, *id.* ¶¶ 16.1-16.5, attempts to resolve the dispute by unanimous agreement, *id.* ¶¶ 30.2-30.3. Second, absent unanimous agreement, the dispute "shall be elevated" to the Steering and Policy Committee ("SAPC"), *id.* ¶ 30.3, which includes the Army Deputy for Environment, Safety, and

---

[3] *See also id.* ¶¶ 11.1 (establishing the Army as Lead Agency for On-Post and Off-Post Operable Units), 14.4(43) (defining "Lead Agency"), 14.4(58) (defining "Organization" to include the Army, EPA, Shell, and, subject to paragraph 10.1, the State).

Occupational Health,[4] EPA's Region 8 Administrator, the Director of the CDPHE,[5] and a Vice President of Shell, or other officials with comparable authority and responsibility, *id.* ¶ 14.4(75). Third, if the dispute cannot be resolved by unanimous agreement at the SAPC, the position of the EPA Region 8 Administrator shall be implemented unless the dispute is elevated to the Final Review Committee ("FRC"), *id.* ¶ 30.5, which consists of the Assistant Secretary of the Army (Installations and Logistics),[6] the Administrator of EPA, the Governor of Colorado, and the President of Shell, *id.* ¶ 14.4(33). To resolve a dispute at the FRC, all of the Organizations must concur in the resolution; otherwise the decision of the United States shall be implemented. *Id.* ¶ 30.6; *see also id.* (establishing that EPA controls the position of the United States).

### 2. Judicial Review

Unless seeking specific performance of the FFA, "an Organization may obtain judicial review only of issues which [sic] an Organization previously sought to resolve through Dispute Resolution or issues that bear a substantial and material relationship to such issues." *Id.* ¶ 39.1; *see also id.* ¶ 30.7 ("Shell and the State may only raise issues that had been previously addressed by the FRC, or issues that bear a substantial and material relation to such issues."). In general, the FFA requires any judicial challenge be limited to the substance of the "relevant ROD" or other decision document that was the subject of the dispute resolution process. *Id.* ¶¶ 30.7, 39.2.

Specific FFA provisions reiterate the broader requirement to conduct dispute resolution

---

[4] This was likely intended to be the Deputy Assistant Secretary of the Army for Environment, Safety and Occupational Health, as that is the title vested with requisite authority at the Army.

[5] The 1989 FFA refers to Colorado Department of Health, which was renamed the Colorado Department of Public Health and Environment in 1994.

[6] At the Army, "Installations and Logistics" is now "Installations, Energy and Environment."

to completion before seeking judicial review. For example, when an Organization objects to the implementation of a "response action" that is a component of any ROD,[7] including deadlines,[8] it must first raise the objection informally with the RMA Committee and "shall indicate whether, and to what extent, [the Organization] believes the activity is not being implemented in accordance with the applicable ROD." *Id.* ¶ 34.18. If the objection cannot be resolved at the RMA Committee level, the Organization may invoke formal dispute resolution; if it does not, implementation is considered proper. *Id.* ¶ 34.19. "Shell and the State shall have the right to judicial review" of the contested implementation issue "[f]ollowing completion of Dispute Resolution." *Id.* ¶ 34.21; *see also id.* ¶ 39.2 (requiring that suit must be filed "not later than 15 days after the end of the FRC's 30-day resolution period").

### 3. The State's Contingent Role in Dispute Resolution

While the FFA "provide[s] for substantial and meaningful involvement of the State in the initiation, development and selection of Response Actions," *id.* ¶ 2.8, this involvement is premised on two conditions precedent. First, the FFA provides that, "[r]egardless of whether the State becomes a signatory," it shall have certain rights and obligations, including the right to attend meetings of the RMA Council, the SAPC, and the FRC, but these rights and obligations vest "*only after* [the State] has agreed in writing . . . to treat as highly confidential, . . . any Confidential Information received by, or made available to it in connection with any activities performed pursuant to" the FFA. *Id.* ¶ 10.1(a) (emphasis added). Second, "[t]he State may

---

[7] At paragraph 14.4(66), the FFA defines a "Response Action" as having the same meaning as "respond" or "response" in 42 U.S.C. § 9601(25): "remove, removal, remedy, and remedial action," including enforcement activities.

[8] *Id.* ¶ 34.2 (addressing "Design and Implementation Deadlines" for response actions).

invoke Dispute Resolution *only after it has agreed to be bound* by the Dispute Resolution process." *Id.* ¶ 10.1(b) (emphasis added); *see also id.* ¶ 30.10(b).

### B. The State's Written Commitment to Be Bound by the FFA Dispute Resolution Process

On June 13, 1995, the State bound itself to the FFA dispute resolution process when the Lieutenant Governor of Colorado, Gail Schoettler, signed the *Agreement for a Conceptual Remedy for the Cleanup of the Rocky Mountain Arsenal* ("Agreement for a Conceptual Remedy"), in which "[t]he Parties agree that the state of Colorado will become a full participant in the FFA Dispute Resolution process." *See* Ex. C - Agreement for a Conceptual Remedy at 2. Later in 1995, EPA and the State concurred in the Army's *Offpost Operable Unit Final Record of Decision* ("Off-Post ROD"), addressing remediation of groundwater outside the north and northwest boundaries at RMA, as demonstrated by the signature of Tom Looby, then Director of CDPHE. Ex. D - Off-Post ROD Excerpt at DS-5.

In June 1996, EPA and the State concurred with the Army's selected CERCLA remedy in the *On-Post Record of Decision* ("On-Post ROD"). "The selected remedy for the On-Post Operable Unit, integrated with . . . the selected remedy for the Off-Post Operable Unit, will comprehensively address all contamination at RMA" and constitutes "the final response action at RMA." Ex. E - On-Post ROD Excerpt at 4-2. The On-Post ROD: (1) identifies the FFA process as the "process for resolving disputes that arise at RMA concerning CERCLA cleanup actions;" (2) confirms that "[t]he state of Colorado became a party to the FFA dispute resolution process on June 13, 1995, when it signed[]" the Agreement for a Conceptual Remedy; (3) reiterates that the dispute resolution "shall be binding upon the state;" and (4) memorializes the State's declaration of "its intention to utilize the FFA dispute-resolution process in a good-faith effort to

resolve all issues informally." *Id.* at 2-11; *see also id.* at 2-10 ("The state has remained actively involved in RMA remediation efforts and participated in informal dispute under the FFA."). A limited reservation of rights excepted "issues not subject to dispute resolution under the FFA" and "issues over which the state has independent authority" from the FFA dispute resolution process. *Id.* at 2-11. Colorado Governor Roy Romer and Lieutenant Governor Gail Schoettler signed the On-Post ROD. *Id.* at D-11.

### C.  The State's Commitment to Dispute Resolution in Other CERCLA Remedy Documents

The State concurred in several documents issued after the RODs that guide the ongoing operations and maintenance ("O&M") phase of the CERCLA remedy at the former RMA and incorporate the FFA dispute resolution process. For example, in 2010, EPA, the Army, Shell, and the State concurred on a *Long-Term Monitoring Plan for Groundwater and Surface Water* ("LTMP") that governs implementation of the groundwater and surface water monitoring requirements of the On-Post and Off-Post RODs, and describes adjustments to the CERCLA remedy status, amendments to the RODs, and follow-up actions recommended in the 2005 Five-Year Review. *See generally* Ex. F - LTMP Excerpt. While the LTMP sets out a consultative process for informal notification and communication regarding issues that may arise during O&M, "[i]f the parties cannot reach consensus," the State agreed that "the Dispute Resolution Process will be utilized consistent with the" FFA. *Id.* at 37-38.

Other documents further demonstrate the State's commitment to the FFA dispute resolution process. In 2011, the Army, Shell, EPA, and the State concurred in the *RCRA-Equivalent, 2-, and 3-Foot Covers Long-Term Care Plan* ("LTCP") that sets out a consultative process for non-routine actions, changing or exceeding compliance standards, corrective

measures, and related disputes, followed by the formal FFA dispute resolution process. Ex. G - LTCP Excerpt at 4, 20, 23, & fig.3.2-1. In October 2013, the Army, Shell, EPA, and the State concurred in a *Land Use Control Plan* ("LUCP") that sets out the land use control requirements of the CERCLA remedy, describes a notification and consultation process for violations, and requires that, "[i]f consensus is not reached, the parties will proceed as outlined in the FFA." Ex. H - LUCP Excerpt at 17.

### D.     The State's Past Participation in the Dispute Resolution Process

In the thirty years since the development of the FFA, most disputes have been resolved informally, or, if formal dispute resolution was invoked, the dispute was resolved at the SAPC level or below. Ex. A - Scharmann Decl. ¶ 4. The State has participated in the dispute resolution process as it has arisen under the RODs since the State formally committed to the FFA process in 1995. *Id.* ¶ 16. For example, the State participated in dispute resolution under the FFA concerning, among other issues, the possible elimination of fencing around Basin A in 1997. *Id.*; Ex. I - Basin A Dispute Resolution Documents. More recently, the State and EPA jointly invoked formal dispute resolution on the *Land Use Control Plan*, Revision D, which resulted in the LUCP in October 2013. *See* Ex. A - Scharmann Decl. ¶ 16; Ex. J - LUCP Dispute Resolution Documents. In October 2015, the State and EPA jointly invoked formal dispute resolution on the *Post-Remedy Soil Sampling Program Phase 2 – Basin C Exceedance Area Sampling and Analysis Plan* ("Basin C SAP"). Ex. A - Scharmann Decl. ¶ 16; Ex. K - Basin C SAP Dispute Resolution Documents. Other than this Complaint, the Army is unaware of the State seeking judicial review regarding implementation of a response action or other component of the RODs without first completing the FFA dispute resolution process. Ex. A - Scharmann

Decl. ¶ 4.

### E. The State's Complaint Bypasses the Dispute Resolution Process

On November 5, 2018, CDPHE notified the Army of seven alleged deficiencies in "compliance with the RODs and/or its conforming management plans" at the former RMA. Ex. L - Notice Letter at 1; *see also* Compl. ¶¶ 24-25.[9] On December 11, 2018, the Army responded that, because the issues were part of the RMA CERCLA remedy, the appropriate forum was the FFA dispute resolution process. Ex. M - Scharmann Letter (Dec. 2018); *see also* Compl. ¶ 26. The Army and CDPHE agreed to discuss each of the seven issues informally in the RMA Committee and to establish deliverables and deadlines. *See* Ex. N - Scharmann Letter (Jan. 2019). CDPHE responded that the "CERCLA FFA dispute resolution process does not adequately address the deficiencies in the [November 5, 2018,] Notice, because it includes no State-enforceable mechanism," and proposed a separate procedure that would include a deadline not set forth in any CERCLA document, a complaint pursuant to 42 U.S.C. § 9621(e)(2), and a proposed joint motion for stipulated injunction. Ex. O - Opila Letter (Mar. 2019) at 1; *see also* Compl. ¶ 27. The Army rejected this proposal and reiterated that the FFA governs the alleged deficiencies. Ex. P - Scharmann Letter (Mar. 2019); *see also* Compl. ¶ 28.

On April 15, 2019, CDPHE filed a five-count Complaint seeking an injunction requiring the Army to submit a plan to "correct the violation[s] of the On-Post ROD" and "comply with" the Off-Post and On-Post "ROD requirements." Compl. at 7-9, 11-12. All five issues described in the claims were identified in the 2015 five-year review conducted under the FFA.

---

[9] The first, fourth, fifth, sixth, and seventh alleged deficiencies in the November 5, 2018, Notice Letter concern the same five claims now raised in the Complaint.

The First Claim alleges that the Army violated the On-Post ROD by not dewatering the "Shell Trenches" at the former RMA. *Id.* ¶¶ 29-36. Three days before filing its Complaint, CDPHE formally raised this issue pursuant to the FFA dispute resolution process. Ex. Q - CDPHE Letter (Apr. 12, 2019). The issue is currently before the RMA Council; if the Council cannot resolve the issue, then it will be raised to the SAPC under the FFA. Ex. A - Scharmann Decl. ¶ 19.

The issues raised in the Second through Fifth Claims are being addressed informally within the RMA Committee. *Id.* ¶¶ 20-23. The Second Claim alleges a violation of the On-Post ROD from exceedances of the Colorado Basic Standards for Groundwater ("CBSG") for 1,4-dioxane. Compl. ¶¶ 37-44. EPA formally raised an issue in dispute resolution related to this contaminant in 2011 as part of the FFA five-year review, which was resolved by agreement of the stakeholders. Ex. A - Scharmann Decl. ¶ 20; Ex. R - 2011 Dispute Resolution Agreement. The Third Claim alleges a violation of the On-Post ROD for exceedance of the CBSG for dieldrin. Compl. ¶¶ 45-54. The Fourth Claim alleges that the Army is not in compliance with Off-Post ROD requirements for certain long-term monitoring requirements near the northwest boundary of the former RMA. *Id.* ¶¶ 55-61. The Fifth Claim alleges that the Army is not in compliance with On-Post ROD requirements concerning certain surface water standards in the area of the former Basin E. *Id.* ¶¶ 62-68.

All of Plaintiff's claims are governed by the FFA and must be raised to completion in the dispute resolution process before being reviewed by this Court.

**ARGUMENT**

**I.** **The FFA Requires That the State Complete Dispute Resolution for Its Claims Prior to Seeking Judicial Review**

The FFA dispute resolution process is required for all five claims in the Complaint before judicial review can be pursued. It is indisputable that the State bound itself to the dispute resolution process in the 1995 Agreement for a Conceptual Remedy. Ex. C - Agreement for a Conceptual Remedy at 2. Indeed, in a Complaint filed in another lawsuit in this Court, CDPHE alleged that "the State did sign and agree to participate in the dispute resolution procedures associated with the FFA for cleanup and closure of [the former RMA]." Complaint, *CDPHE v. United States, et al.*, No. 1:17-cv-02223-MEH, ¶ 25 (D. Colo. Sept. 14, 2017), ECF No. 1. Having bound itself, the FFA requires that the State "may obtain judicial review *only* of issues" that it "previously sought to resolve through Dispute Resolution." Ex. B - FFA ¶ 39.1 (emphasis added); *see also id.* ¶ 30.7 (requiring that "Shell and the State may only raise issues that had been previously addressed by the FRC").

CDPHE's Complaint seeks enforcement of standards, requirements, criteria, or limitations of the CERCLA remedial action at RMA, within the meaning of 42 U.S.C. § 9621(e)(2). *See generally* Compl. The standards and requirements are in the On-Post and Off-Post CERCLA RODs. And the FFA dispute resolution process to which the State bound itself expressly includes disagreements regarding the proper "implementation" of response actions in the RODs at RMA. Ex. B - FFA ¶ 34.19 (allowing Organizations to invoke dispute resolution regarding "whether the response action is being implemented in accordance with the ROD," with the caveat that a failure to invoke dispute resolution "shall constitute . . . acknowledgement that the Response Action is being properly implemented"). CPDHE's claims are objections or

challenges to the implementation of the alleged standards or requirements of the final response actions in the RODs, which are explicitly covered by the FFA in sections XXXIV. Therefore, these claims must be raised to completion in the dispute resolution process before the State can seek judicial review. *Id.* ¶¶ 34.18-34.21.

Likewise, CDPHE's attempt to create enforceable schedules to address alleged ROD non-compliance under CERCLA overlooks the FFA's provisions specifically addressing enforceable schedules and requiring dispute resolution for contested adjustments, including for the implementation of response actions. *See id.* §§ 26.1, 26.14-.15, 34.2, 34.19 (identifying "whether good cause exists for extending an Implementation Deadline" as one of the "issues relating to implementation of a Response Action that may be raised to Dispute Resolution"). In short, the State cannot selectively enforce alleged ROD requirements while ignoring that dispute resolution is also a ROD requirement.

Nor can CDPHE reasonably contend that the FFA dispute resolution process fails to govern its claims. Indeed, faced with this argument prior to filing its Complaint, the State did not respond that it was not bound to the dispute resolution process; rather, it argued that the FFA dispute resolution process "does not adequately address the deficiencies in the Notice, because it includes no State-enforceable mechanism" and suggested that 42 U.S.C. § 9621(e)(2) provided such a mechanism. Ex. O - Opila Letter (Mar. 2019) at 1-2. Thus, this alleged inadequacy does not excuse CDPHE's attempt to bypass its obligation to complete dispute resolution under the FFA, the Agreement for a Conceptual Remedy, the On-Post ROD, and other documents. Further, the lead regulatory agency for the CERCLA remedy at RMA is EPA—not CDPHE, and the State cannot unilaterally seek to enforce deadlines on the Army that are not contained in any

CERCLA document. *See Worldworks I*, 22 F. Supp. 2d at 1205-06 (rejecting a suit in which the plaintiff requested that this Court "submit schedules and arrangements for operation and maintenance[] that are inconsistent with what is already in place, the FFA" for RMA, because doing so would impose additional remedies beyond those in the remedial action already in place). If the State seeks "a schedule with enforceable dates," Compl., PRAYER FOR RELIEF, ¶ 1(a)-(e), it must develop those new requirements of the CERCLA remedy in consultation and cooperation with EPA, the Army, and Shell through the FFA, and any dispute with regard to deadlines must be subjected to dispute resolution. Otherwise, CDPHE is usurping the authority of EPA as the lead regulatory agency with respect to the CERCLA remedy at RMA.

Moreover, the FFA remains the governing document for all aspects of the CERCLA remedy at RMA, including long-term O&M and issues that may arise during the five-year reviews. *Worldworks I*, 22 F. Supp. 2d at 1206. Indeed, the FFA recognizes that O&M and "monitoring the effectiveness of" the CERCLA remedy components "may be necessary for a period of 30 years or more." Ex. B - FFA § 35.1. The long-term application of the FFA is further memorialized and reflected in the various implementation documents concurred in by the State after issuance of the RODs, including the LTMP, LTCP, and LUCP, which adhere to the FFA for formal dispute resolution. Indeed, the FFA dispute resolution process has been invoked to resolve issues as recently as 2013 and 2015. *See* Ex. A - Scharmann Decl. ¶ 16. The FFA dispute resolution process therefore continues to govern the claims and relief sough in the Complaint, and there is no reasonable basis to contend otherwise.

## II.     Requiring the State to Complete Dispute Resolution Will Avoid Unfairness, Maintain the Integrity of the FFA Process, and Preserve Judicial Resources

The Court should compel the State to participate in the contractual FFA dispute resolution process for three additional reasons.[10]  First, allowing the Complaint to proceed would result in fundamental unfairness to the other parties to the FFA and the RODs.  The State's participation in the dispute resolution process with other private and government entities, including EPA, the lead regulatory agency with CERCLA authority for RMA, has created a reliance in those entities for the management and oversight of the remedy.  Indeed, for the First Claim, CDPHE's invocation of the dispute resolution process three days before filing its Complaint requires completion because "[t]he State may invoke Dispute Resolution *only after it has agreed to be bound by the Dispute Resolution process*," Ex. B - FFA ¶ 10.1(b) (emphasis added), and the State is thus equitably estopped from proceeding with its Complaint.

Second, allowing the Complaint to proceed will erode the well-established process for managing the varied interests of multiple entities at RMA under the FFA.  Allowing the State to forego the process now would deny the Army and other parties the benefit of the bargain, *see U.S. Magnesium, LLC v. ATI Titanium, LLC*, No. 2:16-CV-1158 TS, 2017 U.S. Dist. LEXIS 32411, *11 (D. Utah. Mar. 7, 2017), including the benefit of protection of confidential information, as is required of the State as a condition of participation in the dispute resolution process, Ex. B - FFA ¶ 10.1(a).  Accordingly, the Army and other parties may choose to refrain from sharing confidential information and may choose to exclude the State from all meetings and

---

[10] These reasons are consistent with the principles and policies underlying the Federal Arbitration Act, 9 U.S.C. §§ 1-16, under which all doubts about arbitrability are resolved in favor of coverage, *see, e.g.*, *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).

consultations related to the former RMA.  Given the State's role as a stakeholder at the RMA, such an unfortunate outcome would likely reduce the effectiveness of the FFA process overall.

Third, allowing the Complaint to proceed will result in unnecessary expenditure of judicial resources.  In light of the history of the dispute resolution process, the five issues will likely be resolved before a formal dispute reaches the FRC level, *see* Ex. A - Scharmann Decl. ¶ 4, which would have the obvious benefit of mooting one or more of the claims and reducing the need for adjudication in Court.  For the First Claim in particular, if the Complaint proceeds simultaneously with the process that is already underway, the Court may reach a conflicting outcome that could otherwise be avoided.  *See Weller v. HSBC Mortg. Serv., Inc.*, 971 F. Supp. 2d 1072, 1083 (D. Colo. 2013).  Conversely, if CDPHE is not required to comply with the dispute resolution process, it will be allowed to file suit to force the Army to undertake action at RMA on the State's unilaterally preferred schedules, anytime it so chooses.

## CONCLUSION

For all these reasons, the Court should grant this motion and order Plaintiff to seek to resolve the claims in the Complaint via the dispute resolution process in the FFA.

Date:  August 12, 2019                                     Respectfully submitted,

*/s/ Patrick R. Jacobi*
PATRICK R. JACOBI
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
999 18th Street, South Terrace-Suite 370
Denver, CO 80202
(303) 844-1348
patrick.r.jacobi@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that on August 12, 2019, the undersigned caused the foregoing Motion to Compel Contractual Dispute Resolution and Incorporated Memorandum of Law to be served by filing it through the Court's ECF system.  Any counsel not registered with the Court's ECF system will be served by United States mail.

>  */s/Patrick R. Jacobi*
>  Patrick R. Jacobi
>  U.S. Department of Justice
>  Environment & Natural Resources Division
>  Environmental Defense Section
>  999 18th Street, South Terrace-Suite 370
>  Denver, CO 80202
>  (303) 844-1348
>  (303) 844-1350 (fax)
>  patrick.r.jacobi@usdoj.gov