IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01105-PAB-MEH

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,
HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and
UNITED STATES DEPARTMENT OF ARMY,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion to Compel Contractual Dispute Resolution and Incorporated Memorandum of Law [Docket No. 21]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

This dispute involves the cleanup and remediation of the Rocky Mountain Arsenal National Wildlife Refuge ("the Arsenal"). Docket No. 1 at ¶ 1. Plaintiff alleges that defendants have failed to comply with remedial action plans as required by the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). *Id.* Two remedial action plans are at issue: first, the Off-Post Record of Decision ("Off-Post ROD"), which went into effect on December 19, 1995, *id.* at 5, ¶ 18; second, the On-Post Record of Decision ("On-Post ROD"), which went into effect June 11, 1996. *Id.* at 4, ¶ 16. These Records of Decision ("RODs")

broadly control the necessary steps required to cleanup and remediate the Arsenal. To enforce the provisions of these RODs, plaintiff filed this law suit against defendants on April 15, 2019. *Id.* at 15.

In addition to the RODs, a 1989 agreement called the Federal Facility Agreement Pursuant to CERCLA Section 120 ("FFA") details remediation and other necessary actions at the Arsenal. *See* Docket No. 21-2. As relevant here, the FFA outlines a method of non-judicial dispute resolution to ensure compliance with the RODs. *Id.* at 75-78. After the dispute resolution process has concluded, a party can seek judicial review of any issue it attempted to resolve through dispute resolution. *Id.* at 77, 97-98. The FFA provides that "[t]he State may invoke Dispute Resolution only after it has agreed to be bound by the Dispute Resolution process." *Id.* at 22, ¶10.1(b).

The state of Colorado never signed the FFA. Docket No. 21-2 at 128. Nevertheless, plaintiff has utilized the FFA dispute resolution process over the past several decades. For example, Colorado utilized the dispute resolution process in 1997 to resolve issues around Basin A of the Arsenal; in 2013 it invoked the dispute resolution process to resolve issues around the Arsenal's Land Use Control Plan; and, in 2015, it used the dispute resolution process to remedy issues with the Basin C Sampling and Analysis Plan. *See* Docket No. 21-1 at 10, ¶ 16; *see also* Docket No. 21-9; Docket No. 21-10; Docket No. 21-11. The state of Colorado, through Lieutenant Governor Gail Schoettler, evidenced its intent to be bound by the FFA dispute resolution process in a document titled Agreement for a Conceptual Remedy for the Cleanup of the Rocky Mountain Arsenal ("Conceptual Remedy"), which states that the

"[p]arties agree that the State of Colorado will become a full participant in the FFA Dispute Resolution Process."  See Docket No. 21-3 at 2, 20.  According to the On-Post ROD, the signature on the Conceptual Remedy made the state of Colorado "a party to the FFA dispute resolution process" and the dispute resolution process is the "only provision[] of the FFA that shall be binding upon the state."  Docket No. 21-5 at 19.

Defendants seek to compel plaintiff to submit to the dispute resolution process contemplated by the FFA.  See Docket No. 21.  Defendants allege that plaintiff agreed to utilize the FFA dispute resolution process and, therefore, cannot seek judicial review until that process is complete.  Id. at 11.

Defendants' primary argument is that plaintiff agreed to the terms of the FFA and therefore must abide by those terms.  Id.  Plaintiff responds that "[d]efendants cite no law, rule or precedent to support their argument that this Court should, or even could, order the State to engage in the FFA dispute resolution process before proceeding with the present lawsuit."  Docket No. 26 at 2.  Specifically, plaintiff argues that it did not "relinquish its CERCLA [§] 121(e)(2) enforcement authority."  Id.  In reply, defendants contend that they make no such argument, but rather assert that plaintiffs are bound to submit any disagreement to the FFA dispute resolution process before filing suit.  Docket No. 27 at 6-7.

Plaintiff is correct that the FFA itself is not signed by plaintiff.  Docket No. 21-2 at 128.  Indeed, the On-Post ROD states that plaintiff did not sign the FFA.  See Docket No. 21-5 at 18 ("The state did not agree with parts of the FFA and did not become a signatory.").  But the FFA does not condition the state's ability to be bound by the

dispute resolution process on the state signing the FFA.  Rather, the FFA contemplates that the state could also "agree[] to be bound by the Dispute Resolution Process." Docket No. 21-2 at 22, ¶ 10.1(b).  The state concedes that it "agreed to 'become a full participant in' the FFA dispute resolution process."  Docket No. 26 at 1 (quoting Docket No. 21-3 at 2).

Plaintiff argues that, because the On-Post ROD states that Colorado agrees to resolve all issues "informally," it did not agree to "formally" join the FFA dispute resolution process.  Docket No. 26 at 2.  This argument is unpersuasive.  The On-Post ROD reads: "The state declares its intention to *utilize the FFA dispute-resolution process* in a good-faith effort to resole all issues *informally*."  Docket No. 21-5 at 19 (emphasis added).  Rather than declaring that Colorado does not agree to the dispute resolution process, this provision states that Colorado will *utilize* the dispute resolution process to resolve disputes.  Given the use of the word "utilize," and Colorado's express agreement to be bound by the dispute resolution process of the FFA, "informal" means the dispute resolution process of the FFA, rather than "formal" litigation or some other "informal" means of resolution.  The Court thus finds that Colorado did agree to be bound by the dispute resolution procedures of the FFA, which was validly entered into pursuant to § 120(e).  *See WorldWorks I, Inc. v. United States Department of Army*, 22 F. Supp. 2d 1204, 1205 (D. Colo. 1998) (noting that the FFA was executed "pursuant to section 120(e) of CERCLA and consistent with existing EPA guidance).

Plaintiff argues that, even if it agreed to the FFA, it is not bound by it because it never waived its § 121(e)(2) rights and, therefore, the Court cannot enforce its

4

provisions. Section 121(e)(2) states:

> A State may enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform under this chapter in the United States district court for the district in which the facility is located. Any consent decree shall require the parties to attempt expeditiously to resolve disagreements concerning implementation of the remedial action informally with the appropriate Federal and State agencies. Where the parties agree, the consent decree may provide for administrative enforcement. Each consent decree shall also contain stipulated penalties for violations of the decree in an amount not to exceed $25,000 per day, which may be enforced by either the President or the State. Such stipulated penalties shall not be construed to impair or affect the authority of the court to order compliance with the specific terms of any such decree.

§ 121(e)(2). Under § 121(e)(2), a state "may enforce any . . . requirement . . . to which the remedial action is required to conform . . . in the United States district court for the district in which the facility is located." *Id.* However, the fact that the state has enforcement rights does not render its previous agreements to be bound by the FFA's dispute resolution process illusory. Plaintiff may still enforce any remedial action, so long as it first attempts to resolve the issue informally, as § 121(e)(2) requires.

As a result, because the FFA is a valid agreement formed pursuant to §120(e), and Colorado (and thus, plaintiff) is a valid signatory who is bound by the FFA's provisions, plaintiff must first proceed through the dispute resolution process of the FFA before seeking judicial relief.

Local Civil Rule 41.2 permits a district judge to "order the clerk to close a civil action administratively subject to reopening for good cause." D.C.COLO.LCivR 41.2. Because plaintiff may not seek judicial relief until it utilizes the dispute resolution

process, the Court finds that there is good cause to administratively close this case.[1] Either party may move to reopen this case once the dispute resolution process has concluded or for other good cause.

It is therefore

**ORDERED** that defendants' Motion to Compel Contractual Dispute Resolution and Incorporated Memorandum of Law [Docket No. 21] is **GRANTED**.  It is further

**ORDERED** that this case is administratively closed pursuant to D.C.COLO.LCivR 41.2, subject to being reopened for good cause shown.

DATED June 1, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[1] Neither party appears to be opposed to administrative closure.  See Docket No. 27 at 9 n.8.